**IN THE UNITED STASTES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **DAVID P. ECHOLS, STANLEY L. DOVE, ALEX F. MATHEWS, JAMES W. DOVE and TERESA K. DOVE d/b/a TRINITY FARM, and SANDRA K. WHITE, BILLY M. WHITE, SR., and BILLY M. WHITE, JR. d/b/a BMW FARMS,** | ) ) ) ) ) ) ) ) | |
| | ) | **Case No. 3:18-cv-00100-CDL** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **PILGRIM'S PRIDE CORPORATION,** | ) | |
| | ) | |
| **Defendant** | ) | |

**DEFENDANT PILGRIM'S PRIDE CORPORATION'S
<u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

Burke B. Johnson
Georgia State Bar No. 392895

**LUEDER, LARKIN & HUNTER, LLC**
320 East Clayton Street
Suite 418
Athens, Georgia 30601
Tel:  (678) 205-8832
Fax:  (678) 205-8832
Email: BJohnson@luederlaw.com

Clayton E. Bailey
(Admitted *Pro Hac Vice*)
Texas Bar No. 00796151
Benjamin L. Stewart
(Admitted *Pro Hac Vice*)
Texas Bar No. 24046917

**BAILEY BRAUER PLLC**
8350 N. Central Expressway
Suite 206
Dallas, Texas 75206
Telephone: 214-360-7433
Facsimile: 214-360-7435
Email:  cbailey@baileybrauer.com
            bstewart@baileybrauer.com

*ATTORNEYS FOR DEFENDANT PILGRIM'S PRIDE CORPORATION*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.   Preliminary Statement ................................................................................................ 1

II.  Allegations of Fact Relevant to this Motion to Dismiss ........................................... 3

   A.  Pilgrim's and its broiler production operations in the Athens Complex. .......... 3

   B.  Plaintiffs had older, less technologically advanced poultry houses................... 5

   C.  Pilgrim's responds to customers' demand for a new and unique type of chicken............. 6

   D.  In order to raise NAE poultry for its "largest customer," the Athens Complex transitions to AAA poultry housing to foster animal welfare, meet its customer's needs, and promote feed conversion efficiency. ................................................................. 6

   E.  While numerous impacted growers elect to upgrade, Plaintiffs make a business decision not to upgrade and then file this lawsuit. ...................................... 7

III.  Argument and Authorities.......................................................................................... 8

   A.  The Court should dismiss Plaintiffs' claim for wrongful termination............... 8

   B.  Plaintiffs' contract and bad faith claims are not viable because Pilgrim's performed its contractual obligations under the BPAs.......................................... 10

   C.  Plaintiffs lack standing to maintain claims based on violations of PSA regulations........ 12

   D.  Counts III and IV of the Complaint are barred for a plethora of reasons. ....... 12

      1.  Plaintiffs fail to plead sufficient facts to show harm to competition. ........ 12

         a.  Plaintiffs fail to adequately plead a relevant product market. ............15

         b.  Plaintiffs fail to adequately identify a relevant geographic market. ......16

         c.  Plaintiffs fail to show Pilgrim's has market power...............................17

         d.  Plaintiffs cannot show harm to competition based on their allegations................18

      2.  Plaintiffs' PSA claims cannot be based on a "likelihood" of harm. ........... 19

      3.  The PSA claims are barred because Pilgrim's has valid business justifications for its conduct.................................................................................. 20

   E.  Plaintiffs' claim for violation of Georgia's UDTPA and UDPTEA should be dismissed.23

   F.  Plaintiffs cannot succeed on their breach of fiduciary duty claim.................... 25

   G.  Plaintiffs' claims under Ga. Code Ann. §§ 51-1-6 and 51-1-8 are not viable. ................. 26

   H.  The Court should dismiss BMW's promissory estoppel claim. ....................... 28

   I.  Plaintiffs fail to plead facts sufficient to be entitled to recover attorney fees.................. 30

   J.  Plaintiffs cannot recover punitive damages. .................................................... 30

IV.  Conclusion ............................................................................................................... 31

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Adams v. Pilgrim's Pride Corp.*,
    No. 2:09-cv-397, 2011 WL 5330301 (E.D. Tex. Sep. 30, 2011)......................................17, 20

*Adkins v. Cagle Foods JV, LLC*,
    411 F.3d 1320 (11th Cir. 2005) ...........................................................................................11

*Allen v. Hub Cap Heaven, Inc.*,
    484 S.E.2d 259 (Ga. Ct. App. 1997)...............................................................................25, 26

*Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*,
    426 F. Supp. 2d 1356 (N.D. Ga. 2006) ...........................................................................29, 30

*Am. Key Corp. v. Cole Nat'l Corp.*,
    762 F.2d 1569 (11th Cir. 1985) .......................................................................................16, 17

*Am. Needle, Inc. v. NFL*,
    560 U.S. 183 (2010)....................................................................................................................13

*Apani Sw., Inc. v. Coca-Cola Enter., Inc.*,
    300 F.3d 620 (5th Cir. 2002) ....................................................................................................16

*Aquatherm Industries, Inc. v. Fla. Power & Light Co.*,
    971 F. Supp. 1419 (M.D. Fla. 1997).............................................................................14, 16, 19

*Armour & Co. v. United States*,
    402 F.2d 712 (7th Cir. 1968) ....................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................................28

*Automated Solutions Enterprises, Inc. v. Clearview Software, Inc.*,
    567 S.E.2d 335 (Ga. Ct. App. 2002)........................................................................................26

*Automatic Sprinkler Corp. of Am. v. Anderson*,
    257 S.E.2d 283 (Ga. 1979)..................................................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................................17

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)....................................................................................................................18

*Catrett v. Landmark Dodge, Inc.*,
    560 S.E.2d 101 (Ga. Ct. App. 2002)........................................................................................23

*Cent. Coast Meats, Inc. v. U.S. Dep't of Agric.*,
   541 F.2d 1325 (9th Cir. 1976) ................................................................20

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984) ........................................................................18

*DeJong Packing Co. v. Glickman*,
   618 F.2d 1329 (9th Cir. 1980) ................................................................20

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
   136 F.3d 554 (10th Cir. 1998) ................................................................17

*Dupree v. Keller Indus., Inc.*,
   404 S.E.2d 291 (Ga. Ct. App. 1991) ........................................................26

*E.I. duPont de Nemours & Co. v. Kolon Indus., Inc.*,
   637 F.3d 435 (4th Cir. 2011) ................................................................14

*Elliott v. The United Ctr.*,
   126 F.3d 1003 (7th Cir. 1997) ................................................................17

*First Data POS, Inc. v. Willis*,
   546 S.E.2d 781 (Ga. Ct. App. 2001) ........................................................25

*Forsyth Cnty. v. Waterscape Servs., LLC*,
   694 S.E.2d 102 (Ga. Ct. App. 2010) ........................................................10

*Gerdes v. Russell Rowe Commc'ns, Inc.*,
   502 S.E.2d 352 (Ga. Ct. App. 1998) ........................................................28

*Gordon v. Lewiston Hosp.*,
   423 F.3d 184 (3d Cir. 2005) ................................................................14

*Griffin v. Smithfield Foods, Inc.*,
   183 F. Supp. 2d 824 (E.D. Va. 2002) ................................................21, 22

*Higdon v. Jackson*,
   393 F.3d 1211 (11th Cir. 2004) ................................................................27

*IBP, Inc. v. Glickman*,
   187 F.3d 974 (8th Cir. 1999) ................................................................20

*Irving v. Bank of Am.*,
   497 F. App'x 928 (11th Cir. 2012) ........................................................30

*Jackson v. Swift Eckrich, Inc.*,
   53 F.3d 1452 (8th Cir. 1995) ................................................................19

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ............................................................................................14

*JES Props., Inc. v. USA Equestrian, Inc.*,
    253 F. Supp. 2d 1273 (M.D. Fla. 2003) ...................................................13, 15, 17

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*,
    908 F.2d 1351 (7th Cir. 1990) .......................................................................11

*Kin Chun Chung v. JPMorgan Chase Bank, N.A.*,
    975 F. Supp. 2d 1333 (N.D. Ga. 2013) ...........................................................30

*Lady Deborah's, Inc. v. VT Griffin Servs., Inc.*,
    2007 WL 4468672 (S.D. Ga. Oct. 26, 2007) .......................................14, 15, 16, 18

*Levine Cent. Fla. Med. Affiliates*,
    72 F.3d 1538, (11th Cir. 1996) .....................................................................20

*London v. Fieldale Farms Corp.*,
    410 F.3d 1295 (11th Cir. 2005) ..........................................13, 17, 18, 19, 20

*M&M Poultry, Inc. v. Pilgrim's Pride Corp.*,
    281 F. Supp. 3d 610 (N.D. W.Va. 2017) .........................................................17

*Mariner Healthcare, Inc. v. Foster*,
    634 S.E.2d 162 (Ga. Ct. App. 2006) ..............................................................29

*Martin v. Hamilton State Bank*,
    723 S.E.2d 726 (Ga. Ct. App. 2012), *adopted*, 2012 WL 9506252 (Ga. 2012), *aff'd*, 746
    S.E.2d 750 (Ga. 2013) .................................................................................11

*Mauldin v. Sheffer*,
    150 S.E.2d 150 (Ga. Ct. App. 1966) ..............................................................27

*Menasha Corp. v. News Am. Mktg. In-Store*,
    354 F.3d 661 (7th Cir. 2004) ........................................................................14

*Mims v. Cagle Foods JV, LLC*,
    148 F. App'x 762 (11th Cir. 2005) ................................................................11

*Mooney v. Mooney*,
    538 S.E.2d 864 (Ga. Ct. App. 2000) ..............................................................29

*NCAA v. Board of Regents*,
    468 U.S. 85 (1984) ......................................................................................14

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) ....................................................................................18

*Parris v. State Farm Mut. Auto. Ins. Co.*,
    494 S.E.2d 244 (Ga. Ct. App. 1997) ...................................................................26

*Pickett v. Tyson Fresh Meats, Inc.*,
    420 F.3d 1272 (11th Cir. 2005) ..........................................................19, 20, 21

*In re Pilgrim's Pride Corp.*,
    728 F.3d 457 (5th Cir. 2013) ......................................13, 17, 18, 19, 20

*In re Pilgrim's Pride Corp.*,
    448 B.R. 896 (Bankr. N.D. Tex. 2011) ............................................................21

*Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc.*,
    496 S.E.2d 546 (Ga. Ct. App. 1998) ...............................................................30

*Raysoni v. Payless Auto Deals, LLC*,
    766 S.E.2d 24 (Ga. 2014) ................................................................................25

*Reilly v. Alcan Aluminum Corp.*,
    528 S.E.2d 238 (Ga. 2000) ..............................................................................26

*Rosen v. Protective Life Ins. Co.*,
    817 F. Supp. 2d 1357 (N.D. Ga. 2011) ............................................................30

*Sanderson v. Culligan Int'l Co.*,
    415 F.3d 620 (7th Cir. 2005) ...........................................................................14

*Seagood Trading Corp. v. Jerrico, Inc.*,
    924 F.2d 1555 (11th Cir. 1991) ...........................................................13, 18, 19

*Stafford v. Wallace*,
    258 U.S. 495 (1922) ........................................................................................12

*TV Comms. Network, Inc. v. Turner Network Television, Inc.*,
    964 F.2d 1022 (10th Cir. 1992) .......................................................................15

*U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*,
    7 F.3d 986 (11th Cir. 1993) .............................................................................15

*United States v. E.I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956) ..................................................................................13, 14

*United States v. Philadelphia Nat'l Bank*,
    371 U.S. 321 (1963) ........................................................................................16

*Wells Fargo Bank v. Jenkins*,
    744 S.E.2d 686 (Ga. 2013) ..............................................................................27

*Wheeler v. Pilgrim's Pride Corp.*,
    591 F.3d 355 (5th Cir. 2009) (en banc) ...........................................................13

## <u>Statutes</u>

7 U.S.C. § 182(4) ........................................................................................................12

7 U.S.C. § 182(6) ........................................................................................................12

7 U.S.C. § 192(a) .................................................................................2, 12, 13, 21, 27

7 U.S.C. § 192(b) .................................................................................2, 12, 13, 21, 27

7 U.S.C. § 192(e) ........................................................................................................21

7 U.S.C. § 209(a) ...................................................................................................12, 27

9 C.F.R. § 201.53 ...................................................................................................12, 23

9 C.F.R. § 201.100 ......................................................................................................12

9 C.F.R. § 201.200(a) ............................................................................................12, 27

9 C.F.R. § 201.100(c)(1) .............................................................................................29

9 C.F.R. § 201.216 .............................................................................................12, 23, 27

9 C.F.R. § 201.217 .................................................................................9, 10, 12, 23, 27

Fed. R. Civ. P. 8 ..................................................................................................1, 8, 28

Fed. R. Civ. P. 9(b) .............................................................................................1, 8, 25

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 8

Ga. Code Ann. § 2-22-2 ..............................................................................................26

Ga. Code Ann. § 10-1-372(a)(11)-(12) ......................................................................23

Ga. Code Ann. § 10-1-374(a)(1) ...........................................................................23, 24

Ga. Code Ann. § 13-3-44(a) .......................................................................................28

Ga. Code Ann. § 13-6-10 ............................................................................................30

Ga. Code Ann. §13-6-11 .........................................................................................3, 30

Ga. Code Ann. § 23-2-58 ............................................................................................26

Ga. Code Ann. § 51-1-8 .......................................................................................3, 26, 27

Defendant Pilgrim's Pride Corporation ("Pilgrim's) files this Brief in Support of its Motion to Dismiss, and states follows:

## I.      Preliminary Statement

This is a case where the named plaintiffs refused to adapt to a changing marketplace and made a business decision not to reinvest in their enterprises and thus lost their contracts to supply services to Pilgrim's.  This case is also about the exercise of Pilgrim's right not to deal with Plaintiffs based on legitimate, pro-competitive, and valid business reasons.

Plaintiffs David Echols, Stanley L. Dove, Alex F. Mathews, James and Teresa Dove d/b/a Trinity ("Trinity"), and Billy and Sandra White, and their son, Billy Jr., d/b/a BMW Farms ("BMW," and with Messrs. Echols, Dove, and Mathews and Trinity collectively referred to as "Plaintiffs") operate five poultry farms located in northeast Georgia where they previously raised chickens, known as "broilers," under a contract with Pilgrim's.  Plaintiffs' contracts with Pilgrim's are referred to as a "Broiler Production Agreement" ("BPA").  After Plaintiffs refused to upgrade the poultry houses on their respective farms so that they could raise a new and unique type of broiler to satisfy the demands of Pilgrim's "largest customer," Plaintiffs filed this lawsuit alleging eight federal and Georgia state statutory and common law claims.

As demonstrated below, Plaintiffs either plead themselves out of their causes of action or fail to allege facts sufficient to pass muster under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).  For instance, Plaintiffs' wrongful termination claims in Count I fail because Pilgrim's could terminate the BPAs for cause, Pilgrim's provided 90-days written notice of termination to Plaintiffs, and/or Plaintiffs' waived their claims by quitting during the term of their BPAs.

Second, Plaintiffs' accusations in Count II that Pilgrim's breached the BPAs and committed bad faith by reducing bird densities, increasing downtime, changing catch times,

inconsistently providing feed, and placing lesser quality chicks are barred because the BPAs make no promises as to the specific number of birds to be placed, the number of flocks per year, when the birds will be removed or the types of feed or birds provided to Plaintiffs.

Third, Plaintiffs assertions in Count III that liability should be imposed on Pilgrim's for allegedly violating certain United States Department of Agriculture ("USDA") regulations are barred because Plaintiffs lack standing to pursue a private right of action based on the regulations.

Fourth, there are a plethora of independent reasons why the Court should dismiss Plaintiffs' allegations in Counts III and IV that Pilgrim's violated the USDA regulations and/or the Packers and Stockyards, Act, 1921 ("PSA"), 7 U.S.C. §§ 192(a) & (b). These include: (1) Plaintiffs fail to plead sufficient facts showing Pilgrim's harmed competition by neglecting to identify valid relevant product and geographic markets and showing Pilgrim's has market power; (2) Plaintiffs cannot show harm to competition based on their allegations; (3) Plaintiffs cannot rely on the "likelihood of harm to competition" tine to impose liability because this tine solely applies to incipient violations of the PSA seeking injunctive relief; and (4) Plaintiffs' allegations show Pilgrim's has legitimate, pro-competitive business justifications for its conduct; thus, Pilgrim's conduct is not anticompetitive.

Fifth, Plaintiffs' allegations in Count V that Pilgrim's violated Georgia's Unfair and Deceptive Practices Act ("UDTPA") and related Unfair and Deceptive Practices Toward the Elderly Act ("UDPTEA") are fatally flawed for at least four reasons: (1) Pilgrim's conduct is exempt under the UDTPA; (2) Plaintiffs cannot recover damages under the UDPTEA because Pilgrim's did not violate the UDTPA; (3) Pilgrim's did not violate the UDPTEA because the BPAs expressly permit Pilgrim's to engage in the conduct Plaintiffs complain of in this case; and (4) Plaintiffs cannot rely on statements outside the BPAs to claim Pilgrim's violated the UDTPA.

Sixth, Plaintiffs' breach of fiduciary duty claim in Count VI is barred because there was no confidential relationship between Pilgrim's and Plaintiffs giving rise to a fiduciary relationship.

Seventh, Count VII should be dismissed because Plaintiffs' PSA, breach of contract, UDTPA and UDTPEA, and breach of fiduciary duty claims cannot serve as a predicate for maintaining a cause of action under Ga. Code Ann. §§51-1-6 and 51-1-8.

Eighth, BMW's separate promissory estoppel claim alleged in Count VIII is barred because BMW fails to plead facts showing the requisite elements of the claim and the BPA covers the specific issues BMW is complaining about.

Ninth, Plaintiffs' request for attorney fees under Ga. Code Ann. §13-6-11 is precluded because they fail to plead facts sufficient to show that Pilgrim's acted with ill will or furtive design.

Finally, Plaintiffs cannot recover exemplary damages because they cannot succeed on any of their tort claims and their contract-based claims cannot support an award of punitive damages.

## II.  Allegations of Fact Relevant to this Motion to Dismiss

### A.    Pilgrim's and its broiler production operations in the Athens Complex.

Pilgrim's is a poultry company based in Colorado that has operations in Athens, Georgia known as the "Athens Complex."  (Compl. ¶¶ 12, 19, 22.)  The Athens Complex is comprised of two hatcheries, a feed mill, and a chicken processing plant.  (*Id.* ¶ 22.)  These facilities are located "in and around Athens," which is in Clarke County, Georgia.  (*Id.*)

Pilgrim's enters into BPAs with farmers, referred to as "growers," to raise broilers for processing on a flock-to-flock basis.  (*Id.* ¶ 1; *see also* ECF 1-5 at 2, ¶ C; 1-6 at 2, ¶ C; 1-8 at 2, ¶ C.)  The BPAs state that Pilgrim's will provide the chicks, feed, medicine[1], veterinary and technical services to the growers, and remove the chickens upon maturity for processing.  (*Id.* ¶

---

[1]  Pilgrim's retains title to the poultry, feed, and medicine.  (ECF 1-5 at 3, ¶¶ F.1, F.2, F.11; 1-6 at 3, ¶¶ G.1, G.2, G.11; 1-9 at 3, ¶¶ G.1, G.2, G.11.)

21.)  The BPA expressly states that Pilgrim's "shall determine the number, frequency of placement, size of broiler, and breed of birds."  (ECF 1-5 at 3, ¶ F.3; 1-6 at 3, ¶ G.3; 1-9 at 3, ¶ G.3.)  The BPA also states Pilgrim's will provide "the feed necessary to produce the broilers" and "will determine when and where the broilers will be processed.  (ECF 1-5 at 3, ¶¶ F.2 & F.2; 1-6 at 3, ¶¶ F.2 & F.3.)

The growers, on the other hand, agree to provide the land, facilities, utilities, and labor necessary to raise the broilers.  (*Id.* ¶ 24.)  The BPAs obligate the growers to "provide and maintain proper housing, equipment . . . in accordance with the [Pilgrim's] specifications . . . ."  (ECF 1-5 at 3, ¶ G.1; 1-6 at 3, ¶ H.1; 1-9 at 3, ¶ H.1.)  Pilgrim's pays the growers for their services based on a formula described in the BPAs.  (*Id.* ¶¶ 31, 33-34.)  The formula depends primarily on the weight of the grown broilers and the weight of feed used.  (*See e.g.,* ECF 1-5 at 7 & 8; 1-6 at 7 & 8; 1-8 at 7 & 8.)  The formula promotes efficiency because growers whose poultry use less feed to gain each pound of weight (known as "feed conversion") receive more money in comparison to growers whose flocks have a less efficient feed conversion.  (*Id.*; *see also* ECF 1-5 at 7-8; 1-6 at 7-8.)

Additionally, Athens Complex growers who construct and use more technologically advanced housing to raise the broilers receive a higher "base pay" under the BPAs.  For instance, before 2018, Athens Complex growers had the option of raising broilers using one of four different types of poultry housing.  (Compl. ¶ 29.) The oldest and least technologically advanced category of poultry housing is known as "unimproved/conventional" housing.  (Compl.  ¶ 29.)  The next step-up the spectrum of technologically advanced poultry housing is known as "improved" and had a base pay rate of $5.30 cents per pound.  (*Id.*; *see also* ECF 1-9 at 7-8.)  The third most technologically advanced class of poultry houses are referred to as "AA" poultry houses.  (Compl.

¶ 29.)  The most technologically-advanced category of poultry housing with the highest base pay ($6.15 cents per pound) is "AAA" poultry houses.  (*Id.*; *see also* ECF 1-4 at 2.)

Because of the superior technology used in AAA poultry houses, growers are able to provide a more stable and controlled house environment for the broilers than growers who operate the other three types of poultry houses.  (ECF 1-4 at 2.)  The improved environment in a AAA poultry house is better for the broilers' welfare and enables the poultry to perform more efficiently as it relates to feed conversion.  (*Id.*)

Pilgrim's Athens Complex first offered the BPA for AAA housing in May 2014.  (Compl. ¶ 43.)  Within two years, there has been "an almost 9% increase in square footage in" poultry houses in the Athens Complex and "this new square footage was mostly, if not exclusively, newly constructed Class AAA housing."  (*Id.* ¶ 42.)

**B.    Plaintiffs had older, less technologically advanced poultry houses.**

Plaintiffs operate a total of five different broiler farms, which raise broilers for Pilgrim's Athens Complex.  (*Id.* ¶¶ 1-2, 62-63, 95-96, 102, 122, 124, 129, 144, 146, 152, 166.)  Plaintiffs Echols and Dove operate broiler farms in Madison County, Georgia.  (*Id.* ¶¶ 59 & 92.)  Plaintiffs Mathews' and BMW's poultry farms are located in Oglethorpe County, Georgia.  (*Id.* ¶¶ 121 & 164.)  The Complaint fails to identify the location of Trinity.  (*See generally* Compl.)  Each Plaintiff signed a BPA.  (*Id.* ¶¶ 1, 63, 102, 129, 152, 166.)

Although Plaintiffs do not specify the ages of their poultry houses, the Complaint's allegations demonstrate that four of the five Plaintiffs owned and operated "improved" housing that have been used for decades.  (*Id.* ¶¶ 60-61, 64, 80 (Echols); 93-94 (Dove); 122-123 (Mathews); 144-145 (Trinity).)  For instance, Plaintiffs Dove, Mathews, and Trinity have been raising poultry for approximately 27-28 years.  (*Id.* ¶¶ 93, 122, 144.)  Plaintiff Echols had four

broiler houses, two of which were "post houses" that were so outdated they could not be upgraded to meet AAA specifications.  (*Id.* ¶¶ 60, 80.)  BMW, on the other hand, had three "improved" poultry houses that were retired in 2014 and eight AA houses, which are between 19-23 years old. (*Id.* ¶¶ 168-169.)

**C.      Pilgrim's responds to customers' demand for a new and unique type of chicken.**

In recent years, consumers have begun demanding poultry products that are raised without antibiotics.  Consequently, in 2014 "Chick-fil-A made a public commitment . . . to serve only chicken raised with 'No Antibiotics Ever' by December 31, 2019."  (*Id.* ¶ 222.)

Pilgrim's entered in the antibiotic free poultry market by "'tailoring' its antibiotic-free poultry production "'to specific needs of [Pilgrim's] key customers.'"  (*Id.* ¶ 219.)  The Athens Complex's "largest customer" is Chick-fil-A.  (*Id.* ¶ 220.)  Consequently, to satisfy its largest customer's demands, Pilgrim's switched its broiler production in the Athens Complex to No Antibiotics Ever ("NAE") production beginning in 2018.[2]  (*Id.* ¶ 221; *see also* ECF 1-4 at 2 & 3.)

**D.      In order to raise NAE poultry for its "largest customer," the Athens Complex transitions to AAA poultry housing to foster animal welfare, meet its customer's needs, and promote feed conversion efficiency.**

Raising NAE broilers has its challenges.  "The main challenges facing producers of NAE poultry relates to intestinal health, specifically to the prevention and control of coccidiosis and necrotic enteritis . . . ."  (*Id.* ¶ 242.)  Consequently, NAE poultry must be raised in a more stable and controlled poultry house environment in order to promote the welfare of the broilers, ensure livability, and improve their performance.  (ECF 1-4 at 2.)

---

[2]  In response to customers' desire for antibiotic-free chicken, poultry companies, in general, increased production of antibiotic-free poultry from "17.4% of all chicken produced in the United States during the last six months of 2016" to "40.5% of all US fresh chicken production" "during the first ten (10) months of 2017. . . ."  (Compl. ¶ 218.)

In order to satisfy the NAE poultry needs of its largest customer, the Athens Complex required all of its growers with non-AAA housing to upgrade to AAA housing. (*Id.* at 1 & 2.) Pilgrim's announced its decision in a letter dated February 14, 2017. (*Id.*) Each impacted grower, including Plaintiffs, were provided until June 30, 2017 to notify Pilgrim's whether the grower would upgrade their poultry housing and/or build new housing to AAA specifications. (*Id.* at 1.) If a grower either refused or did not respond, Pilgrim's explained that it would provide the grower with 90-days written notice of termination and "make plans to replace your housing with other square footage." (*Id.*) During the 90-day interim period, Pilgrim's agreed to provide the grower with flocks of poultry to raise. (*Id.*) Pilgrim's "target[ed] December 31, 2017 as the date we begin no longer placing birds in conventional/unimproved, improved and Class AA housing." (*Id.*) Pilgrim's also requested impacted growers to contact the company if they needed "additional time" to meet a deadline. (*Id.* at 3.)

**E.    While numerous impacted growers elect to upgrade, Plaintiffs make a business decision not to upgrade and then file this lawsuit.**

In response to Pilgrim's February 17, 2017 letter, "34 new Grow-out Houses, averaging 32,400 square feet each, were under construction as of June 2017." (Compl. ¶ 10.) In fact, the positive response from the impacted farmers was more than Pilgrim's anticipated. (*Id.* ¶ 182.) Although Pilgrim's believed initially "that only 30% of the approximately 48 Impacted Plaintiffs would make the upgrades to Class AAA," approximately 70% of those growers upgraded. (*Id.*)

Unlike the overwhelming majority of impacted farmers who made a business decision to upgrade, Plaintiffs refused to do so. For instance, Plaintiff Echols elected not to upgrade his poultry housing and instructed Pilgrim's to quit delivering additional flocks after receiving 90-days written notice of termination. (ECF 1-7; Compl. ¶ 89.) Similarly, Plaintiff Dove admits he "was hesitant to make the required upgrade because, among other reasons, he was unwilling to go

7

further into debt and/or the costs of the upgrades would impair his ability to ultimately retire." (*Id.* ¶ 112.) Consequently, Mr. Dove instructed Pilgrim's not to deliver chicks to his broiler houses. (*Id.* ¶ 117.) Likewise, Plaintiff Mathews determined "that he was unwilling to go back into debt to make the upgrades . . . [and] began applying for jobs." (*Id.* ¶¶ 121, 131, 137.) After receiving a job offer, Mr. Mathews instructed Pilgrim's in "July or August 2017 not to place another flock after the June Mathews Flock was processed on July 17, 2017." (*Id.* ¶¶ 138.) Finally, the owners of Trinity were also "unwilling to go back into debt" to make the upgrades, but unlike other Plaintiffs, Trinity[3] continued to receive and raise flocks of broilers during the 90-day interim period before the termination of its BPA became effective. (*Id.* ¶¶ 154, 155, 159 & 160.)

On the other hand, BMW began upgrading its poultry housing, unsuccessfully attempted to sell the farm, and instructed Pilgrim's not to deliver additional flocks of chicks after December 5, 2017. (*Id.* ¶¶ 185, 195-198, 203.)

On July 27, 2018, Plaintiffs filed this lawsuit alleging eight causes of action. (*See* Compl.)

### III.  Argument and Authorities

Because the Court is aware of the standard for dismissing cases under Rules 8, 9(b), and 12(b)(6), Pilgrim's will not reiterate those standards here. As demonstrated below, Plaintiffs' various causes of action are barred for failure to state a claim upon which relief can be granted.

**A.     The Court should dismiss Plaintiffs' claim for wrongful termination.**

Plaintiffs' allegations in Count I that Pilgrim's wrongfully terminated the BPAs fail for numerous reasons. First, the clear and express language of the BPAs show that Plaintiffs refusal to upgrade their poultry houses to AAA standards constituted a material breach of at least four separate clauses of the BPA: (1) Plaintiffs' obligation to "provide and maintain proper housing,

---

[3] Trinity does not contend that Pilgrim's failed to provide 90-days written notice of termination similar to the termination notice that Mr. Echols received. (*See generally* Compl.)

equipment . . . in accordance with the Company's specifications . . . ." (*see, e.g.*, ECF 1-5 at 3, ¶ G.1; 1-8 at 3, ¶ H.1); (2) Plaintiffs' promise to "follow . . . the Company's written and verbal management recommendations, including, but not limited to, . . . brooding, . . . house environment, lighting" (*see, e.g.*, ECF 1-5 at 3, ¶ G.2; 1-8 at 3, ¶ H.2); the "Animal Welfare" clause (*see, .e.g.*, ECF 1-5 at 4, ¶ G.8; 1-8 at 4, ¶ H.8); and (4) the duty to use "best efforts in maintaining the broilers in such a manner that optimizes uniformity, health, livability, and the performance of the broilers to market age." (*See, e.g.*, ECF 1-5 at 4, ¶ H.1; 1-8 at 4, ¶ I.1.) Accordingly, under the BPA's termination clause, Pilgrim's was entitled to terminate Plaintiffs' BPAs for cause after providing 90-days notice of termination. (*See, e.g.*, ECF 1-5 at 2, ¶ D; 1-8 at 2, ¶ E.) And that's precisely what Pilgrim's did with respect to the Plaintiffs who did not quit before the 90 days passed. (*See, e.g.,* ECF 1-7 at 2.) Accordingly, Pilgrim's terminated the BPAs in accordance with their terms.

Second, Plaintiffs' contention that Pilgrim's wrongfully terminated their BPAs by allegedly failing to provide notice and an opportunity to cure in violation of 9 C.F.R. § 201.217 lacks merit. (Compl. § 253.) Plaintiffs cannot engraft the nebulous "criteria" of § 201.217 into the BPAs (which include a merger clause) and then claim Pilgrim's breached the BPAs by supposedly failing to satisfy the regulation's "criteria." Conversely, even if § 201.217 is relevant to Plaintiffs' wrongful termination claim, which it is not, the Complaint's allegations and exhibits show that Pilgrim's February 14, 2017 letter satisfied the regulation.

The February 14, 2017 letter notified all impacted growers that their existing poultry houses no longer met Pilgrim's new housing specifications for raising NAE poultry, described the means by which to satisfy Pilgrim's AAA housing requirements, provided the growers with a reasonable deadline for performing the upgrades, and offered to provide additional time to the growers to perform the upgrades if necessary. (ECF 1-4 at 2-3.) The letter also attached a

"Checklist for AAA Houses" identifying the upgrades to be performed.  (*Id.* at 5.)  The Complaint's allegations also show that Plaintiffs were aware of the upgrade program and that their poultry houses needed to be upgraded, Plaintiffs were provided sufficient information to investigate and determine the costs associated with upgrading their poultry houses, and they each made a business decision not to upgrade.  (Compl. ¶¶ 59-203, ECF 1-4 at 2-5.)  Hence, Plaintiffs' arguments based on § 201.217 are untenable.

Finally, the Court should dismiss Count I because Plaintiffs (excluding Trinity) waived their wrongful termination claim by quitting before the termination became effective.  *Forsyth Cnty. v. Waterscape Servs., LLC*, 694 S.E.2d 102, 109-110 (Ga. Ct. App. 2010).  Plaintiffs admit they instructed Pilgrim's to stop delivering poultry to their farms before the termination of their BPAs became effective and while Pilgrim's was still placing chicks in non-NAE poultry houses.  (Compl. ¶¶ 89, 117, 138, & 203.)  Thus, Plaintiffs' Count I claim is precluded.

**B.      Plaintiffs' contract and bad faith claims are not viable because Pilgrim's performed its contractual obligations under the BPAs.**

The Court should dismiss Plaintiffs' claims in Count II that Pilgrim's breached its responsibilities under the BPAs, including its implied duty of good faith and fair dealing in performing those responsibilities, because Plaintiffs do not plead facts showing Pilgrim's breached its duties.  Furthermore, "[t]here can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Automatic Sprinkler Corp. of Am. v. Anderson*, 257 S.E.2d 283, 284 (Ga. 1979).

In Count II, Plaintiffs complain about reductions in bird density rates for certain flocks, increased out-times between certain flocks, infrequent delays in feed deliveries, inconsistent broiler catch times, the sporadic delivery of chicks of an unspecified lesser quality, and the limitation on euthanizing newborn chicks—all with no corresponding or agreed upon

compensation.  (Compl. ¶¶ 262-265.)  But Plaintiffs' accusations are groundless because Pilgrim's reserved the right in the BPAs to determine the number, frequency of placement, size and breed of the chicks placed on Plaintiffs' broiler farms.  (Compl. ¶ 260; ECF 1-5 at 3, ¶ F.3; 1-6 at 2, ¶ G.3; 1-8 at 3, ¶ G.3; 1-9 at 3, ¶ G.3.)  Pilgrim's also reserved complete discretion in providing the feed and determining when the poultry will be removed for processing.  (Compl. ¶ 260; ECF 1-5 at 3, ¶¶ F.2-F.4; 1-6 at 2, ¶¶ G.2-G.4; 1-8 at 3, ¶¶ G.2-G.4; 1-9 at 3, ¶¶ G.2-G.4.)  The BPAs also do not require Pilgrim's to adjust grower compensation based on Plaintiffs' complaints.  (ECF 1-5 at 7 & 8; 1-6 at 7 & 8; 1-8 at 7 & 8; 1-9 at 7 & 8.)  Under these circumstances, legal authority holds that a broiler grower lacks a viable breach of contract claim.  *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005); *Mims v. Cagle Foods JV, LLC*, 148 F. App'x 762, 769 (11th Cir. 2005).

It is well-established that "[w]hat the intent of the parties was in making the contract must control; it is possible to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties and in such a case the issue of good faith is irrelevant." *Automatic Sprinkler Corp. of Am.*, 257 S.E.2d at 284.  Another court has explained:

> Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.'  Although courts often refer to the obligation of good faith that exists in every contractual relation, this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document.  'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.  When the contract is silent, principles of good faith ... fill the gap.  They do not block use of terms that actually appear in the contract.

*Martin v. Hamilton State Bank*, 723 S.E.2d 726, 728 (Ga. Ct. App. 2012), *adopted*, 10-CV-03684-JFL002, 2012 WL 9506252 (Ga. 2012), *aff'd*, 746 S.E.2d 750 (Ga. 2013) (quoting *Kham & Nate's*

*Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357(III) (7th Cir.1990) (citations omitted)).

Pilgrim's performed its duties under the BPA—duties that were expressly reserved to Pilgrim's discretion in the BPAs.  Accordingly, Count II should be dismissed.

**C.     Plaintiffs lack standing to maintain claims based on violations of PSA regulations.**

Plaintiffs' claims based on purported violations of 9 CFR §§ 201.53, 201.100, 201.200(a)[4], 201.217, and 201.261 are precluded as a matter of law.  (Compl. ¶¶ 268-280.)  These regulations are promulgated under the PSA, and PSA § 209 paves a path for a private right of action against a regulated entity such as Pilgrim's, but only for a violation of the PSA or a final order of the USDA Secretary.  PSA § 209 does *not* create a private right of action for a violation of a *regulation*:

> **(a)** If any person subject to this chapter violates ***any of the provisions of this chapter, or of any order of the Secretary under this chapter***, relating to the purchase, sale, or handling of livestock, the purchase or sale of poultry, or relating to any poultry growing arrangement or swine production contract, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

7 U.S.C. § 209(a) (emphasis added).  Thus, Count IIII should be dismissed with prejudice.

**D.     Counts III and IV of the Complaint are barred for a plethora of reasons.**

Even if the Court determines Plaintiffs have standing to assert claims based on the regulations, Plaintiffs' PSA claims in Counts III and IV fail for numerous independent reasons.

**1.     Plaintiffs fail to plead sufficient facts to show harm to competition.**

The PSA is a federal antitrust statute that Congress enacted for the purpose of preventing anticompetitive behavior in the meat industry.  *Stafford v. Wallace*, 258 U.S. 495 (1922).  PSA § 192 states, in relevant part, the following:

---

[4] Plaintiffs also cannot rely on 9 C.F.R. § 201.200(a) (Compl. ¶¶ 274, 290(f)) because the regulation relates solely to the sale of livestock to a packer on credit.  Plaintiffs admittedly raised poultry, not livestock, and did not sell the poultry to Pilgrim's on credit, but were paid for raising poultry.  *See* 7 U.S.C. §§182(4), (6).

It shall be unlawful for . . . any live poultry dealer with respect to live poultry, to:

>    **(a)** Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or
>
>    **(b)** Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect; …

7 U.S.C. § 192 (a)-(b).

Subsections (a) and (b) do not prohibit all conduct that may be considered "unfair," "unjustly discriminatory," or "deceptive," or that subjects anyone to any "undue or unreasonable preference or advantage" or "undue or unreasonable prejudice or disadvantage."  Instead, the conduct is *only* actionable if it has an *anticompetitive effect or likelihood thereof*.  *London v. Fieldale Farms Corp.*, 410 F.3d 1295, 1303-04 (11th Cir. 2005).

Because Plaintiffs must show harm to competition, standard antitrust principles apply. *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 357-63 (5th Cir. 2009) (en banc).  As with other antitrust statutes, federal courts "apply a rule of reason in determining the lawfulness of a particular practice."[5]  *Armour & Co. v. United States*, 402 F.2d 712, 717 (7th Cir. 1968); *In re Pilgrim's Pride Corp.*, 728 F.3d 457, 462 (5th Cir. 2013).  In applying a rule of reason analysis, the inquiry is whether, in light of all the relevant facts, the restraint imposed is such that it may suppress or destroy competition.  *In re Pilgrim's Pride Corp.*, 728 F.3d at 462 (citing *Am. Needle, Inc. v. NFL*, 560 U.S. 183 (2010)).  Plaintiffs must allege that Pilgrim's "conduct had an impact upon competition in Plaintiffs' profession, not just upon his business, and that the alleged restraint on

---

[5] To the extent Plaintiffs may assert that Pilgrim's alleged violation(s) of certain PSA regulations constitute *per se* violations, they are mistaken.  (*See* Compl. ¶¶ 268-280, 289-291.)  Long-time antitrust policies form the PSA's backbone and "'Congress gave the Secretary [of the USDA] no mandate to ignore the general outline of long-time antitrust policy. . . .'"  *London*, 410 F.3d at 1304 (quoting *Armour*, 402 F.2d at 722.)  Under antitrust principles, "[t]he Supreme Court has made it clear that the *per se* label should be applied infrequently and with caution."  *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567 (11th Cir. 1991).  To date, the rule of *per se* illegality has been applied to only four categories of restraints, none of which are alleged here:  (1) horizontal and vertical price fixing; (2) horizontal market divisions; (3) group boycotts or concerted refusals to deal; and (4) tying arrangements.  *Id.* at 1567 n. 33.  Hence, if Plaintiffs are able to assert claims based on the regulations, a rule of reason analysis applies.

trade was reasonably calculated to prejudice public interest." *JES Props., Inc. v. USA Equestrian, Inc.*, 253 F. Supp.2d 1273, 1281 (M.D. Fla. 2003) (citations omitted).

Under a rule of reason analysis, the first step is to plead a relevant market, including both a product market and a geographic market. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377 (1956). The market definition serves as a tool to determine Pilgrim's alleged market power. *E.I. duPont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 441 (4th Cir. 2011). Failure to allege either a valid product or geographic market is fatal to Plaintiffs' PSA claims. *Lady Deborah's, Inc. v. VT Griffin Services, Inc.*, No. CV207-079, 2007 WL 4468672, at *9 (S.D. Ga. Oct. 26, 2007).

After alleging an appropriate relevant market, Plaintiffs must show that Pilgrim's has "market power" within that relevant market—that is, the ability to raise or lower prices above or below those that would be charged in a competitive market. *NCAA v. Board of Regents*, 468 U.S. 85, 109 n. 38 (1984); *accord Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 27 n. 46 (1984). Simply stated, "[f]irms that lack power cannot injure competition no matter how hard they try." F. Easterbrook, *The Limits of Antitrust*, 63 Tex. L. Rev. 1 (1984). Courts generally hold that proof of a defendant's market power is a prerequisite for a plaintiff seeking to use a market analysis to satisfy its burden of proving anticompetitive effect. *See, e.g., Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 622-23 (7th Cir. 2005); *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 213 (3d Cir. 2005); *Menasha Corp. v. News Am. Mktg. In-Store*, 354 F.3d 661, 663 (7th Cir. 2004). Market share is an important consideration in determining whether the business is acting in violation of the law. *Lady Deborah's Inc.*, 2007 WL 4468672, at *9.

### a.    Plaintiffs fail to adequately plead a relevant product market.

Plaintiffs' PSA claims should be dismissed because they fail to allege facts showing a relevant product market.  The relevant product market must include consideration of "'those products or services that are either (1) identical to or (2) available substitutes for the defendant's product or service.'"  *Lady Deborah's, Inc.*, 2007 WL 4468672, at *9 (quoting *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 971 F. Supp. 1419, 1426-1427 (M.D. Fla. 1997)).  "The reasonable interchangeability . . . between a product and its substitutes" is an important consideration, as is the cross-elasticity of demand for the products.  *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993).  "The cross-elasticity of demand is an economic principle that calculates how responsive demand of one good or service is to a change in price of another good or service. If the goods or services being compared are substitutes, then there will be a positive correlation in the cross-elasticity of demand."  *Lady Deborah's, Inc.*, 2007 WL 4468672, at *9 n. 7.  In short, the relevant product market includes all reasonably interchangeable products.

Here, Plaintiffs fail to identify a valid product market.  Plaintiffs allege that "Pilgrim's created a monopsony or was part of an oligopsony for Grow-out Services generally and certainly for Grow-out Services using Grow-out Houses that were not newly or recently constructed." (Compl. ¶ 233.)  Plaintiffs, however, do not provide the rationale for why the relevant product market should be defined so narrowly to exclude all contract poultry grower services regardless of the class of poultry housing or the type of broiler raised.  (*See generally* Compl.)  In fact, Plaintiffs concede their poultry houses and their services are part of a larger market for grower services involving different classes of poultry housing in the Northeast Georgia.  (*See generally* Compl.; *see also id.* ¶ 205.)  Further, Pilgrim's pay system is designed and implemented across all growers regardless of housing type.  (*See, e.g,,* ECF 1-5 at 7 & 8; 1-6 at 7 & 8.)  Consequently, Plaintiffs'

alleged relevant product market is fatally defective because it fails to consider available substitutes. *Am. Key Corp.*, 762 F.2d at 1579 (showing a relevant product market is "absolutely essential"); *TV Comms. Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (granting motion to dismiss because plaintiff's alleged relevant product market was defective); *JES Properties, Inc.*, 253 F. Supp.2d at 1281-1284 (dismissing complaint for failure to allege a relevant market, including a relevant product market).  Thus, Counts III and IV should be barred.

      **b.**    **Plaintiffs fail to adequately identify a relevant geographic market.**

The Court should also dismiss Counts III and IV because the relevant geographic market as defined in the Complaint is defective as a matter of law.  The relevant geographic market is an economic concept used to examine, in the monopsony context[6], buyer-supplier relations.  *United States v. Philadelphia Nat'l Bank*, 371 U.S. 321, 327 (1963).  "The relevant market is the 'area of effective competition' in which competitors are generally willing to compete for the consumer potential and not the market of a single company."  *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985).  In the upstream market, the relevant geographic market includes the area where a potential buyer may rationally look for the goods or services sought.  *Aquatherm Indus., Inc.*, 971 F. Supp. at 1427.  "A precise definition of the geographic market is required," *Am. Key Corp.*, 762 F.2d at 1579 n. 7, and the failure to allege an adequate geographic market is fatal.  *Id.* at 1579 (showing a relevant geographic market "is absolutely essential"); *Lady Deborah's, Inc.*, 2007 WL 4468672, at *9.

Here, Plaintiffs allege that the relevant geographic market is merely the two counties where their poultry farms are located—Madison and Oglethorpe Counties.  (Compl. ¶¶ 7-11, 233.)  But

---

[6]  Plaintiffs allege Pilgrim's is a monopsonist or oligopsonist.  (Compl. ¶ 233.)  A monopsonist refers to monopolization by a single buyer.  *Apani Sw., Inc. v. Coca-Cola Enter., Inc.*, 300 F.3d 620, 629 n. 5 (5th Cir. 2002).

Plaintiffs fail to delineate why the geographic market should be limited solely to those two counties and not all of the areas in and around the counties where the infrastructure for Pilgrim's Athens Complex is located (i.e., Athens, Clarke County, Georgia (Compl. ¶ 22))—for example, Jackson, Barrow, Oconee, Walton, Morgan, Putnam, and Greene Counties.  Indeed, Plaintiffs fail to allege facts describing where Pilgrim's contracts with growers to raise broilers for the Athens Complex.

In PSA cases, courts refer to the driving distance between Pilgrim's plant or feed mill in relation to growers' farms, as well as the total number of growers in a region, in order to determine the relevant geographic market.[7]  These facts, which are critical to a PSA rule of reason analysis, are omitted from the Complaint.  (*See generally* Compl.)  These sorts of allegations are necessary for Plaintiffs to demonstrate a valid relevant geographic market to support their PSA claims and thus they should be dismissed.  *See, e.g., Am. Key Corp.*, 762 F.2d at 1581 (rejecting artificially narrow definition of relevant geographic market); *Elliott v. The United Ctr.*, 126 F.3d 1003, 1004-1005 (7th Cir. 1997) (granting dismissal because the alleged geographic market was too narrow); *JES Properties, Inc.*, 253 F. Supp.2d at 1281-1284 (dismissing claim based on defective relevant geographic market); *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560-61 (10th Cir. 1998) (dismissing claim for pleading a too narrow geographic market where plaintiff alleged that the geographic market is the locus where services were provided to the defendant).

### c.  Plaintiffs fail to show Pilgrim's has market power.

By failing to adequately allege facts showing relevant product and geographic markets, Plaintiffs necessarily cannot support their naked assertion that Pilgrim's has market power as a

---

[7]  *See, e.g., M&M Poultry, Inc. v. Pilgrim's Pride Corp.*, 281 F. Supp.3d 610, 619 (N.D. W.Va. 2017) ("Pilgrim's generally contracts with broiler growers whose farms are no more than fifty miles from its feed mills or processing plants.  The furthest complex grower is fifty-seven direct miles and sixty-five driving miles from the Complex's processing plant."); *Adams v. Pilgrim's Pride Corp.*, No. 2:09-cv-397, 2011 WL 5330301, at *6 (E.D. Tex. Sep. 30, 2011), *rev'd*, *In re Pilgrim's Pride Corp.*, 728 F.3d 457 (5th Cir. 2013) (identifying the "alleged geographic market is a 40-mile radius around the El Dorado Complex); *London*, 410 F.3d at 1304 (barring growers' PSA claims for failure to show "the total number of chicken growers or buyers in the North Georgia area.").

monopsonist or oligopsonist, particularly when the Complaint vaguely references the existence of other purchasers of poultry growing services in the area.  (Compl. ¶ 205, *see also id.* ¶¶ 91, 120, 142, 163); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Further, the Complaint is devoid of any allegations discussing the number of chicken growers in the region, the percentage of the market Pilgrim's controls, or what percentage of Pilgrim's chickens are grown by Plaintiffs or other growers.  (*See generally* Compl.)  In short, the Complaint does nothing to show Pilgrim's stature within the chicken industry in Northeast Georgia or the United States, let alone for the production of "regular" versus antibiotic-free or NAE poultry.  (*Id.*)  In the absence of allegations showing market power, Plaintiffs fail to show Pilgrim's conduct harms competition.  *See London*, 410 F.3d at 1304-1305.

### d.    Plaintiffs cannot show harm to competition based on their allegations.

Plaintiffs' PSA allegations, taken as true, cannot show a valid claim because what they complain of is the impact of Pilgrim's policy on them as opposed to the impact of the policy on competition as a whole. It is axiomatic that the purpose of antitrust laws "is to protect competition, not individual competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

Next, under standard antitrust principles, courts are hesitant to condemn the unilateral act of a single firm in the PSA context, which is what Plaintiffs allege here.  *In re Pilgrim's Pride Corp.*, 728 F.3d at 462 (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767-69 (1984)).  There are no allegations that Pilgrim's engaged improper horizontal conduct.

Additionally, "it is well established that a party 'may choose with whom he will do business and with whom he will not do business,' and that this behavior . . . will not give rise to liability absent a showing of actual competitive injury." *Seagood Trading Corp.*, 924 F.2d at 1567.

"'The freedom to switch suppliers lies close to the heart of the competitive process that the antitrust laws seek to encourage.'" *Lady Deborah's, Inc.* 2007 WL 4468672, at *6 (quoting *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137 (1998)). This is precisely what Plaintiffs allege occurred here—Pilgrim's elected to quit doing business with broiler growers who refused to raise the new NAE poultry in AAA poultry houses that would foster animal welfare, ensure a ready supply of NAE poultry to the plant to meet customer demand, and enhance feed conversion efficiency. "It is a harsh reality than when competition occurs, some win and some lose." *Seagood Trading Corp.*, 924 F.2d at 1573 (11th Cir. 1991). Emerging defeated from competition, however, is not illegal under the PSA. To hold otherwise contradicts antitrust law and defeats the PSA's purpose, which is "to promote efficiency, not frustrate it." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1280 (11th Cir. 2005) (quoting *Jackson v. Swift Eckrich, Inc.*, 53 F.3d 1452, 1458 (8th Cir. 1995)). Accordingly, the PSA claim should be dismissed. *See, e.g., Aquatherm Indus., Inc.*, 971 F. Supp. at 1431 (granting motion to dismiss because plaintiff "alleged nothing more than a unilateral refusal by [defendant] alone to deal" with plaintiff "and such unilateral action is not proscribed").

Finally, to the extent Plaintiffs contend "the conversion of the Athens Complex to NAE Poultry" "may have a likelihood of competitive injury on the conventional market by reducing the convention poultry supply (from a historical perspective) in the geography served by the Athens Complex" (Compl. ¶ 291), PSA case law establishes that "it is lawful for a business to independently control its own output." *In re Pilgrim's Pride Corp.*, 728 F.3d at 463.

### 2.    Plaintiffs' PSA claims cannot be based on a "likelihood" of harm.

Plaintiffs allege that they are not required to show any harm to competition in order to prevail under their PSA claims. (Compl. ¶ 291.) This assertion is unsupported by controlling legal authority. *London*, 410 F.3d at 1303. However, Plaintiffs hedge their position and assert that to

the extent they must show an anticompetitive effect, all they must demonstrate is a likelihood of harm as opposed to actual harm to competition.  (Compl. ¶ 291.)  Again, Plaintiffs are wrong.

Under the PSA, a "likelihood of competitive injury" concerns *incipient violations* where harm *has not yet occurred*.  In those cases, the appropriate relief is injunctive relief.  This interpretation of the statute is consistent with PSA case law and the USDA's litigation position.  *See IBP*, *Inc. v. Glickman*, 187 F.3d 974, 977 (8th Cir. 1999) ("[A] practice which is likely to reduce competition … can be a predicate for a cease and desist order."); *DeJong Packing Co. v. U.S. Dep't of Agric.*, 618 F.2d 1329, 1336-37 (9th Cir. 1980) (cease and desist order could issue based on a likelihood of harm to competition because "the purpose of the Act is to halt unfair trade practices in their incipiency, before harm has been suffered); *Cent. Coast Meats, Inc. v. U.S. Dep't of Agric.*, 541 F.2d 1325, 1327 (9th Cir. 1976) (USDA arguing that the "likely" qualifier applies in PSA § 192 cases to "uproot unfair practices in their *incipiency*.") (emphasis added).

Here, the Complaint is devoid of any request for injunctive relief.  (*See generally* Compl.) Instead, Plaintiffs seek money damages based on Pilgrim's past conduct.  (Compl. ¶¶ 280, 292.) Accordingly, Plaintiffs must show actual harm to competition—allegations omitted from the Complaint.  *See Adams v. Pilgrim's Pride Corp.*, No. 2:09-cv-397, 2011 WL 5330301 (E.D. Tex. Sept. 30, 2011), *rev'd*, *In re Pilgrim's Pride Corp.,* 728 F.3d 457 (5th Cir. 2013) (District court's imposition of liability under PSA § 192 based on a "likelihood of injury" was reversed and rendered because Pilgrim's conduct did not harm competition.)  Indeed, to conclude otherwise would render the actual harm to competition tine nugatory.

### 3.   The PSA claims are barred because Pilgrim's has valid business justifications for its conduct.

On the other hand, regardless of which tine of anticompetitive harm must be shown, Plaintiffs plead themselves out of a PSA claim by alleging facts showing that Pilgrim's has

legitimate, pro-competitive business justifications for its conduct at issue; thus, Pilgrim's conduct could not have an anticompetitive effect. *Pickett*, 420 F.3d at 1280; *London*, 410 F.3d at 1304. Indeed, under the rule of reason, if there is a pro-competitive justification for the conduct, liability cannot be imposed because there is no harm to competition as a matter of law. *Levine Cent. Fla. Med. Affiliates*, 72 F.3d 1538, 1551 (11th Cir. 1996).

Courts routinely preclude claims under PSA § 192 where the defendant has a legitimate business reason for its conduct. For instance, in *Pickett v. Tyson Fresh Meats, Inc.*, the Eleventh Circuit affirmed the trial court's decision to set aside a $1.2 billion jury verdict based on alleged violations of PSA §§ 192(a), (b), and (e) because Tyson had legitimate business justifications for decreasing purchases of plaintiffs' cattle on the cash market. 420 F.3d at 1274, 1279, 1281-1286. The Eleventh Circuit determined that Tyson's conduct was valid because it resulted in Tyson acquiring a "reliable and stable supply of cattle for its packing plants," reduced transaction costs, and incented cattle producers to provide Tyson "with the quality and yield of meat" Tyson needs to satisfy consumer demand. *Id.* at 1282-83.

In *In re Pilgrim's Pride Corporation*, a court rejected numerous poultry growers' PSA §§ 192 (a), (b), and (e) claims where Pilgrim's idled poultry plants and terminated their BPAs because Pilgrim's actions were necessary for the company to financially survive. 448 B.R. 896, 904-05 (Bankr. N.D. Tex. 2011). There, Pilgrim's was "incurring huge losses that could best be stemmed by reducing their production of chicken for the commodity market." *Id.* at 905. The plants selected for idling and the poultry growers selected for contract termination were either inefficient performers or necessary to bring poultry production into line with consumer demand. *Id.* The court barred the growers' PSA claims because Pilgrim's conduct was performed for a valid

business reason:  "Had [Pilgrim's] not put a stop to their losses, it is likely that their business would either have failed entirely or would have had to be cut back even more at a future date." *Id.*

In *Griffin v. Smithfield Foods, Inc.*, 183 F. Supp.2d 824 (E.D. Va. 2002), hog farmers alleged PSA § 192(a) claims after a pork packer steadily refused to acquire hogs from individual farmers on the spot market and instead opted to enter into contractual arrangements and direct ownership of the hogs.  *Id.* at 825.  The hog farmers, who were no longer able to sell their hogs on the spot market, complained that the defendant's conduct was "unfair" and had the "'effect of manipulating or controlling price or restraining commerce.'"  *Id.*  The district court disagreed, holding that the packer's move toward vertical integration was pro-competitive because it fostered quality control and efficiency.  *Id.* at 828.  In reaching its decision, the district court wrote:

> The pork industry does not exist in isolation within the meat market or under law.
> Pork is just one aspect of the wider meat market.  To restrain vertical integration in
> the pork industry would have implications in other meat industries, such as poultry
> and beef.  The Plaintiffs have not sought to join the ranks of contract suppliers of
> hogs to the defendants.  Such contract suppliers are subject to timing and quality
> control standards that Plaintiffs find an affront to their independence.  While such
> independence may be a virtue in many respects, the family farm, the corner grocer
> and the main street specialty store have all fallen victim to the direction in which
> the country's economy has developed.  No degree of sympathy for the Plaintiffs'
> difficulty in maintaining their traditional way of doing business translates to
> wrongdoing on the part of the Defendants.

*Id.* at 828 (citations omitted).

Here, Plaintiffs' allegations show that Pilgrim's conduct was merely a legitimate and pro-competitive response to its "largest customer['s]" decision only to sell NAE poultry products to a population seeking to buy chicken that is raised without antibiotics.  (Compl. ¶¶ 219-221.)  In order to promote animal welfare in the face of raising chickens without antibiotics, to ensure a steady supply of broilers to the plant, and foster efficient feed conversion, Pilgrim's implemented a poultry housing upgrade program in the Athens Complex—a right Pilgrim's expressly reserved in

the BPAs.  (ECF 1-4 at 2-3; 1-5 at 3, ¶ G.1; 1-6 at 3, ¶ H.1; 1-8 at 3, ¶ H.1; 1-9 at 3, ¶ H.1.)  And in order to incentivize the impacted growers to upgrade to AAA specifications, Pilgrim's paid a competitive rate as exemplified by the overwhelming positive response from the growers.  (Compl. ¶¶ 42-44, 182.)  And to the extent Plaintiffs allege Pilgrim's decreased bird densities or extended the downtimes of flocks for growers with non-AAA housing as the Athens Complex transitioned to NAE broiler production, such conduct incentivized growers to upgrade their poultry houses and stemmed from the change-over to a new, unique type of poultry.  Thus, Pilgrim's conduct did not harm competition.

### 4.   Plaintiffs fail to show Pilgrim's breached the PSA regulations.

Plaintiffs fail to plead facts showing Pilgrim's violated the vague and ambiguous "criteria" identified under 9 C.F.R. §§ 201.216 and 201.217, and neglect to show Pilgrim's made "knowingly . . . false reports, records, or representation[s]" to Plaintiffs concerning prices of any live poultry necessary to maintain a claim under § 201.53.  And to the extent Plaintiffs rely on the USDA's notice of violation ("NOV") (ECF 1-10), that reliance is misplaced because Pilgrim's response to the NOV shows the NOV is marred with factual holes and legal errors.[8]  (*See* Ex. E hereto.)

### E.   Plaintiffs' claim for violation of Georgia's UDTPA and UDPTEA should be dismissed.

Plaintiffs' claim under the UDTPA and the related UDPTEA is defective for several reasons.  First, the claim fails because, as demonstrated above regarding Plaintiffs' PSA claims, Pilgrim's acted in accordance with rules and statutes administered by the federal government.  Thus, Section 10-1-374(a)(1) of the Georgia Code provides that Pilgrim's conduct is exempt from claims under the UDTPA.  *See* Ga. Code Ann. § 10-1-374(a)(1) ("(a) This part does not apply to: (1) Conduct in compliance with the orders or rules of or a statute administered by a federal, state,

---

[8]  The Complaint refers to Pilgrim's response to the NOV (and even intentionally misinterprets Pilgrim's representations therein), but conveniently omits attaching Pilgrim's response as an exhibit.  (*See* Compl. ¶ 210.)

or local governmental agency; . . .").  Plaintiffs' claim that Pilgrim's violated subsections 10-1-372(a)(11)-(12) of the UDTPA, therefore, fail.  (*See* Compl. ¶ 295.)

Because Pilgrim's did not violate the UDTPA, Plaintiffs cannot recover damages under the UDPTEA, which merely provides a mechanism to recover damages that are not available under the UDTPA.  That is because "injunctive relief is the only remedy permitted by the UDTPA." *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002).  Thus, Plaintiffs may only recover damages—as opposed to injunctive relief—by claiming that a violation of the UDTPA also violated some other statute—here, the UDPTEA.  But because Plaintiffs' claim under the UDPTEA is premised solely on the purported violation of the UDTPA—which Pilgrim's could not have violated because its conduct complied with federal law—Plaintiffs' UDPTEA claim should be dismissed.  *See* Ga. Code Ann. § 10-1-374(a)(1).

Plaintiffs' UDPTEA claim should also be dismissed because reduction in bird density, increased downtime, and other supposed representations complained about in paragraphs 296-297 of the Complaint do not violate the UDTPA.  For example, paragraph G.3 of Stanley Dove's BPA provides that Pilgrim's "shall determine the number, frequency of placement, size of broiler, and breed of birds."  (*See* ECF 1-8 at 3, ¶ G.3.)  Mr. Dove's BPA also includes language explaining when Pilgrim's may terminate the BPA, and Plaintiffs' allegations show that Pilgrim's has not violated that provision.  (*Id.* at 2, ¶ E.)  And the BPA requires growers to "provide and maintain proper housing, equipment, litter and utilities in accordance with the Company's specifications" (*id.* at 3, ¶ H.1) and "use their best efforts in maintaining the broilers in such a manner that optimizes uniformity, health, livability, and the performance of the broilers to market age" (*id.* at 4, ¶ I.1).  "If Independent Grower fails to use best efforts in management and/or housing of broilers . . . the Company has the right (at its option) to suspend placement of chicks until such deficiencies

are corrected."  (*Id.*)  In short, the BPA expressly permits Pilgrim's to determine the density of chicks placed, the frequency of placement, and to require growers to make the upgrades necessary to support NAE birds.  Because the BPA clearly sets forth these provisions, Plaintiffs cannot claim Pilgrim's made "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or engaged "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  (Compl. ¶ 295.)

Plaintiffs also cannot rely on statements outside of the contract to claim Pilgrim's violated the UDTPA.  *See, e.g.*, *Raysoni v. Payless Auto Deals, LLC*, 766 S.E.2d 24, 26 (Ga. 2014) ("when one is bound by a contract that includes terms that expressly, conspicuously, unambiguously, and squarely contradict precontractual representations, any reliance upon those precontractual representations may be deemed unreasonable as a matter of law").  The BPA's merger clause— paragraph I.10 (*see, e.g.,* ECF 1-8 at 5, ¶ I.10)—prevents Plaintiffs from relying on any alleged "prior or contemporaneous representations that contradict the written contract" because such representations "'cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.'"  *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. Ct. App. 2001).  Accordingly, Count V should be dismissed with prejudice.[9]

## F.    Plaintiffs cannot succeed on their breach of fiduciary duty claim.

Plaintiffs cannot establish a claim for breach of fiduciary duty because there was no confidential relationship between Pilgrim's and Plaintiffs giving rise to a fiduciary relationship. The BPA makes clear that Plaintiffs are independent contractors, and Plaintiffs fail to allege facts

---

[9]  Plaintiffs' fraud-based claim under the UDTPA and UDPTEA also fails because Plaintiffs neglected to plead the claim with sufficient particularity.  *See* Fed. R. Civ. P. 9(b).  The allegations in paragraphs 296-298 of the Complaint are too vague for Pilgrim's to determine who made the supposed statements, when they were made, and where or how they were communicated.

demonstrating otherwise.  (*See, e.g.,* ECF 1-5 at 2, ¶ A & 4, ¶ G.14; 1-6 at 2, ¶A & 4, ¶ H.14; 1-8 at 2, ¶ A & 4, ¶ H.14.)  Thus, Plaintiffs cannot prove there was a confidential relationship giving rise to a fiduciary duty.  *See Allen v. Hub Cap Heaven, Inc.*, 484 S.E.2d 259, 264 (Ga. Ct. App. 1997) ("The franchise contract expressly provided for an independent contractor relationship between Hub Cap Heaven and its franchisees.  Hub Cap Heaven has cited no case finding a confidential relationship in such circumstances.").

The Complaint's allegations show "that the relationship between [Plaintiffs] and [Pilgrim's], close and lengthy as it might have been, was merely a business relationship between two independent concerns." *Automated Solutions Enterprises, Inc. v. Clearview Software, Inc.*, 567 S.E.2d 335, 338 (Ga. Ct. App. 2002). The BPA sets forth the duties Pilgrim's owed to Plaintiffs, and Pilgrim's did not breach those duties.  And even if Pilgrim's breached a contractual duty to Plaintiffs, their remedy is a breach of contract claim, not a tort claim for breach of fiduciary duty.

Plaintiffs, like the plaintiffs in *Allen* and *Automated Solutions Enterprises, Inc.*, claim Pilgrim's owed them a fiduciary duty under Ga. Code Ann. § 23-2-58.  This Court, like the courts in those cases, should hold that Plaintiffs were merely independent contractors and that Pilgrim's did not owe them a fiduciary duty.  Thus, Count VI should be dismissed with prejudice.

**G.     Plaintiffs' claims under Ga. Code Ann. §§ 51-1-6 and 51-1-8 are not viable.**

Plaintiffs' Ga. Code Ann. §§ 51-1-6 and 51-1-8 claims are barred because they are not cognizable and no relief can be granted.  Sections 51-1-6 and 51-1-8 merely codify common law general principles of tort law and authorize the recovery of damages for the breach of a legal or private duty otherwise created.  *See Reilly v. Alcan Aluminum Corp.*, 528 S.E.2d 238, 240 (Ga. 2000).  These provisions "do[] not confer a separate cause of action in tort upon one who has

suffered a breach of a legal or a private duty." *Parris v. State Farm Mut. Auto. Ins. Co.*, 494 S.E.2d 244, 246 (Ga. Ct. App. 1997). Instead, they operate in conjunction with a statute or private action that imposes a legal duty, but does not expressly provide a claim. *See Dupree v. Keller Industries, Inc.*, 404 S.E.2d 291, 294-95 (Ga. Ct. App. 1991).

Plaintiffs predicate their Ga. Code Ann. §§ 51-1-6 and 51-1-8 claims on alleged violations of the PSA and the PSA regulations, the BPAs, state common law, and Ga. Code Ann. § 2-22-2. (Comp. ¶ 320.) Plaintiffs, however, are wrong.

First, the PSA expressly provides a cause of action for a violation of its sections, including § 192(a) and (b). *See* 7 U.S.C. § 209(a). Indeed, Plaintiffs brought separate claims under the PSA, including § 192(a) and (b), in Counts III and IV of their Complaint. (*See* Compl. ¶¶ 268-280 and 281-292.) Consequently, claims for violation of §§ 51-1-6 and 51-1-8 cannot be raised in conjunction with alleged violations of the PSA. *See Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004).

Similarly, if Plaintiffs may bring claims based on violations of the PSA regulations, which Pilgrim's denies, Plaintiffs claims under §§ 51-1-6 and 51-1-8 fail. However, if Plaintiffs cannot sue Pilgrim's based on the regulations, Plaintiffs' §§ 51-1-6 and 51-1-8 claims are still barred because the regulations fail to provide for certain duties or the performance of or refraining from any specific acts, nor do they articulate or imply a standard of conduct. Rather, regulations like 9 C.F.R. §§ 201.216 and 201.217 merely reference amorphous "criteria" considered by the USDA Secretary.[10] *See Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013).

Next, Plaintiffs claim Pilgrim's breached the BPAs—the contracts between the parties— in Counts I and II of their Complaint. (*See* Compl. ¶¶ 246-267.) "Generally, a mere breach of a

---

[10] As demonstrated on p. 12 n. 4, 9 C.F.R. § 201.200(a) is inapplicable to the poultry industry.

valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort or authorize the aggrieved party to elect whether he will proceed ex contractu or ex delicto." *Mauldin v. Sheffer*, 150 S.E.2d 150, 153 (Ga. Ct. App. 1966).  If there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained.  *Id*.  Accordingly, Plaintiffs cannot bring a tort claim under §§ 51-1-6 and 51-1-8 in conjunction with a breach of contract claim.

Finally, Plaintiffs' claim under the statute in conjunction with Georgia common law is ambiguous and unclear.  Plaintiffs make a naked assertion that Pilgrim's violated the "Georgia common law" under the "principles set forth in *Tapley v. Youmans*" without providing what principles or facts they claim are applicable or how they apply.  (Compl. ¶ 323.)  Such a claim does not meet the pleading requirements of Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## H.     The Court should dismiss BMW's promissory estoppel claim.

BMW cannot satisfy the elements of its promissory estoppel claim.  The requirements for promissory estoppel are codified in the Georgia Code.  *See* Ga. Code Ann. § 13-3-44(a). Importantly, promissory estoppel does not apply if the promisor—Pilgrim's—should not reasonably expect to induce action or forbearance.

Here, BMW could not reasonably rely on any supposed oral agreements by Pilgrim's broiler manager, Josh Aaron, to continue placing chicks in all eight of its poultry houses or to place chicks with BMW's successor in interest.  (Compl. ¶¶ 180-81, 328-33.)  BMW alleges its BPA was substantially similar to the form 2016 BPA attached to the Complaint as Exhibit G.  (*Id.* at ¶ 186.)  But that BPA has a clause stating it can only be modified in writing.  (*See* ECF 1-9 at 5, ¶ I.13.)  Moreover, the BPA's "'clear and unambiguous provision'" preventing oral modification placed BMW "'on due notice that [it] could not thereafter reasonably rely upon any words or other

course of dealing to [its] inducement, other than a modification agreement actually reduced to writing.'" *Gerdes v. Russell Rowe Commc'ns, Inc.*, 502 S.E.2d 352, 355 (Ga. Ct. App. 1998).  And indeed, BMW did *not* rely on any promise from Pilgrim's to its detriment.  On the contrary, BMW admits it told Pilgrim's sometime on or after December 5, 2017 that it did not want to continue raising broilers.  (Compl. ¶ 203.)  Because the actions BMW claims it took in reliance on oral promises from Pilgrim's all occurred before that date, BMW cannot claim it was injured by Pilgrim's complying with BMW's instruction not to deliver additional birds.

BMW's promissory estoppel claim also fails because the alleged promises are not specific enough to be enforced.  Promissory estoppel does not apply "to vague, indefinite promises." *Mooney v. Mooney*, 538 S.E.2d 864, 868 (Ga. Ct. App. 2000).  Thus, the alleged promise to continue placing chicks at BMW *for an unspecified and indefinite period of time* is unenforceable.[11]  *See Mariner Healthcare, Inc. v. Foster*, 634 S.E.2d 162, 168 (Ga. Ct. App. 2006).

BMW's promissory estoppel claim should also be dismissed because the BPA addresses the specific issues BMW is complaining about.  *See Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) ("Where parties enter into a contract with bargained for consideration, the terms of which include the promises alleged in support of a promissory estoppel claim, promissory estoppel is not available as a remedy.").  Here, the oral promises BMW complains about are that Pilgrim's will (1) continue placing chicks with BMW and (2) enter into a contract to a prospective purchaser of BMW.  (Compl. ¶¶ 180-81, 195-97, 328-29, 333.)  Both of these issues are addressed in the BPA.  The BPA includes provisions regarding the placement and housing of broilers—*i.e.*, the same subject matter as the purported promise to

---

[11]  Such a promise is also unenforceable because federal law requires agreements between a poultry integrator like Pilgrim's and a broiler grower like BMW to be in writing and "clearly specify" the "duration of the contract and conditions for the termination of the contract by each of the parties."  *See* 9 C.F.R. § 201.100(c)(1).  Thus, oral agreements are not enforceable.

continue placing chicks in BMW's poultry houses.  (*See, e.g.*, ECF 1-9 at 3, ¶¶ G.1, G.3, H.1; *id.* at 4, ¶ I.1.)  The BPA also includes language governing the purported promise to contract with a prospective grower in place of BMW and states that Pilgrim's "is under no obligation whatsoever to approve a transfer" of a grower's "rights or obligations" under the BPA "or grant a new contract."  (*See id.* at 4, ¶ I.2.)  Because the BPA covers the precise issues on which BMW's promissory estoppel claim is based, the claim fails as a matter of law.

Finally, because BMW does not contend the BPA is invalid or unenforceable, it cannot assert promissory estoppel.  Even when a promissory estoppel claim is asserted in the alternative, it cannot survive when "neither side disputes the existence of a valid contract."  *Am. Casual Dining*, 426 F. Supp. 2d at 1371.  Thus, the promissory estoppel claim should be dismissed.

## I.     Plaintiffs fail to plead facts sufficient to be entitled to recover attorney fees.

Plaintiffs' claim for attorney fees under Ga. Code Ann. §13-6-11 on the basis Pilgrim's acted in bad faith should be dismissed because Plaintiffs fail to show that Pilgrim's acted with ill will or furtive design.  *See Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc.*, 496 S.E.2d 546, 550 (Ga. Ct. App. 1998); *see also Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1351 (N.D. Ga. 2013) (Ga. Code Ann. § 13-6-11 "imports a dishonest purpose or some moral obliquity and implies conscious doing of wrong and a breach of known duty through some motive of interest of ill will.").  Rather, Plaintiffs' allegations and their exhibits show that Pilgrim's conduct was permissible under the BPAs. (*See* Compl. ¶¶ 335-337.)

## J.     Plaintiffs cannot recover punitive damages.

Plaintiffs' request for punitive damages should be dismissed because Plaintiffs cannot succeed on any of their tort claims.  *Irving v. Bank of Am.*, 497 F. App'x 928, 930 (11th Cir. 2012).  Moreover, Plaintiffs' contract-based claims cannot support the award of punitive damages.  *See*

*Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1383 (N.D. Ga. 2011); Ga. Code Ann. § 13-6-10.  Thus, Count X is precluded as a matter of law.  (*See* Compl. ¶¶ 338-40.)

## IV.  Conclusion

For all the reasons discussed herein, Pilgrim's requests that each of Plaintiffs' causes of action alleged in the Complaint be dismissed.

Respectfully submitted,

By: /s/ Clayton E. Bailey
      Burke B. Johnson
      Georgia State Bar No. 392895

      **LUEDER, LARKIN & HUNTER, LLC**
      320 East Clayton Street
      Suite 418
      Athens, Georgia 30601
      Tel: (678) 205-8832
      Fax: (678) 205-8832
      Email: BJohnson@luederlaw.com

      -  And -

      Clayton E. Bailey (Admitted *Pro Hac Vice*)
      Texas State Bar No. 00796151
      Benjamin L. Stewart (Admitted *Pro Hac Vice*)
      Texas State Bar No. 24046917

      **BAILEY BRAUER PLLC**
      Campbell Centre I
      8350 N. Central Expressway, Suite 206
      Dallas, Texas 75206
      Tel: (214) 360-7433
      Fax: (214) 360-7435
      Email: cbailey@baileybrauer.com
                bstewart@baileybrauer.com

      **ATTORNEYS FOR DEFENDANT**
      **PILGRIM'S PRIDE CORPORATION**

**IN THE UNITED STASTES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **DAVID P. ECHOLS, STANLEY L.** )<br>**DOVE, ALEX F. MATHEWS, JAMES** )<br>**W. DOVE and TERESA K. DOVE** )<br>**d/b/a TRINITY FARM, and SANDRA** )<br>**K. WHITE, BILLY M. WHITE, SR.,** )<br>**and BILLY M. WHITE, JR. d/b/a** )<br>**BMW FARMS,** )<br>                                    )<br>         **Plaintiffs,**              )<br>                                    )<br>**vs.**                              )    **Civil Action File No. 3:18-cv-00100-CDL**<br>                                    )<br>**PILGRIM'S PRIDE CORPORATION,**     )<br>                                    )<br>         **Defendant**               ) | |

**CERTIFICATE OF SERVICE**

I certify that on September 5, 2018, I electronically filed ***DEFENDANT PILGRIM'S PRIDE CORPORATION'S BRIEF IN SUPPORT OF MOTION TO DISMISS*** with the Clerk of Court using the CM/ECF system, which provide notice of such filing and service to all attorneys of record, including:

> Joel L. McKie, Esq.
> Andrew K. Hazen, Esq.
> **HALL BOOTH SMITH, P.C.**
> 191 Peachtree Street NE, Suite 2900
> Atlanta, Georgia  30303

> /s/ Clayton E. Bailey
> Counsel for Defendant Pilgrim's Pride Corporation